## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| DANIEL BRADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NANCY BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Case No. 4:16-cv-02020-JEO

## MEMORANDUM OPINION

Plaintiff Daniel Brady brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (*See* Doc. 18). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff protectively filed his current DIB application on November 14, 2013, alleging he became disabled on June 1, 2001. (R. 17). He amended his disability onset date to April 1, 2014, at his administrative hearing. (R. 42). The administrative law judge ("ALJ") issued an unfavorable decision on January 29, 2016. (R. 17-29). Plaintiff submitted his appeal to the Appeals Council. Upon consideration, the Appeals Council found no reason to review the ALJ's decision. (R. 1). The matter is now properly before this court.

# II. FACTS

Plaintiff was 61 years old at the time of the ALJ's decision. He has a high school education with three years of college. He also has received a diploma for mechanical, electrical, and architectural drafting training. (R. 44-45). Plaintiff initially alleged disability due to depression, anxiety, arthritis, post-traumatic stress disorder, diabetes, mini strokes, and low testosterone. (R. 218).

Following a hearing, the ALJ found that Plaintiff had the following medically determinable impairments: obesity; mild multilevel degenerative disc and facet changes in the lumbar spine; mid-foot arthritis in both feet; arthritis in the right (non-dominant) shoulder; posttraumatic arthritis in the right knee; type II diabetes mellitus; hypertension; status-post rotator cuff repair of the left shoulder

(2000); kidney stones; controlled gastroesophageal reflux disease; a history of headache disorder; cataracts; and macular degeneration. (R. 19). He also found that Plaintiff's impairments did not meet or equal any of the listed impairments. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 22). He further found Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work. (R. 22-28). Next, he determined Plaintiff could perform his past work as a maintenance mechanic and grocery clerk. (R. 28, 66). Accordingly, the ALJ determined Plaintiff was not under a disability as defined in the Social Security Act. (R. 29).

### III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The claimant has the burden of producing evidence to support his disability claim. *See* 20 C.F.R. §

4

404.1512(a), 404.1515.

Determination of disability under the Social Security Act requires a five step analysis.  20 C.F.R. §§ 404.1520(a)(4).  Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[2] (citing 20 C.F.R. § 404.1520(a)(4)).  The plaintiff bears the burden of proving that he was disabled within the meaning of the Social Security Act.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Id*.

## V.  DISCUSSION

Plaintiff argues five grounds of error: First, the ALJ incorrectly found that Plaintiff can perform his past work; Second, the ALJ failed to afford adequate

---

[2]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

weight to the opinion of Plaintiff's treating urologist; Third, the ALJ failed to state adequate reasons for finding Plaintiff not credible; Fourth, the ALJ failed to develop the record; and Fifth, the ALJ failed to consider all of Plaintiff's severe impairments. (Doc. 11 at 1-2). Each argument will be addressed below.

## A.    Past Relevant Work

Plaintiff argues that the ALJ failed to perform an analysis of his past work and make specific findings regarding the physical and mental demands of that work. (Doc. 11 at 16-19). The Commissioner responds that the ALJ adequately considered Plaintiff's prior work history and substantial evidence supports the ALJ's determination that Plaintiff could perform his past relevant work. (Doc. 15 at 5-7). She also argues that Plaintiff has not identified any demands of his prior positions that are inconsistent with his RFC. (*Id.*)

The record shows that the ALJ relied on testimony from a vocational expert ("VE") concerning Plaintiff's past work experience. (R. 65-70). The VE testified that Plaintiff's past, relevant work as a maintenance mechanic was performed at a medium, skilled level. The VE identified the position in the Dictionary of Occupational Titles ("DOT") § 638.281-014. (R. 66). *See* 1991 WL 685519.[3]

---

[3]Maintenance Mechanic is defined by the DOT as follows:

Repairs and maintains, in accordance with diagrams, sketches, operation manuals, and manufacturer's specifications, machinery and mechanical equipment, such as

The VE also testified that Plaintiff's past, relevant work as a grocery clerk was

performed at a medium, semi-skilled level. He again identified the position in the

DOT at § 290.477-018. (R. 66). *See* 1991 WL 672555.[4] The VE further testified

---

engines, motors, pneumatic tools, conveyor systems, and production machines and
equipment, using handtools, power tools, and precision-measuring and testing
instruments: Observes mechanical devices in operation and listens to their sounds
to locate causes of trouble. Dismantles devices to gain access to and remove
defective parts, using hoists, cranes, handtools, and power tools. Examines form
and texture of parts to detect imperfections. Inspects used parts to determine
changes in dimensional requirements, using rules, calipers, micrometers, and
other measuring instruments. Adjusts functional parts of devices and control
instruments, using handtools, levels, plumb bobs, and straightedges. Repairs or
replaces defective parts, using handtools and power tools. Installs special
functional and structural parts in devices, using handtools. Starts devices to test
their performance. Lubricates and cleans parts. May set up and operate lathe, drill
press, grinder, and other metalworking tools to make and repair parts. May initiate
purchase order for parts and machines. May repair electrical equipment. May be
designated according to machine repaired as Carton-Forming-Machine Adjuster
(any industry); Machine Adjuster (tobacco); Maintenance Mechanic, Record
Processing Equipment (recording).

1991 WL 685519.

[4]The DOT defined the position as follows:

Obtains or prepares food items requested by customers in retail food store, totals
customer bill, receives payment, and makes change: Fills customer order,
performing duties such as obtaining items from shelves, freezers, coolers, bins,
tables, or containers; cleaning poultry; scaling and trimming fish; slicing meat or
cheese, using slicing machine; preparing take-out sandwiches and salads;
dispensing beverages; and warming food items in oven. Weighs items, such as
produce, meat, and poultry to determine price. Lists and totals prices, using paper
and pencil, calculator, or cash register. Informs customer of total price of
purchases. Receives payment from customer for purchases and makes change.
Bags or wraps purchases for customer. Cleans shelves, bins, tables, and coolers.
Stamps, marks, or tags price on merchandise. Sets up displays and stocks shelves,
coolers, counter, bins, tables, freezers, containers, or trays with new merchandise.
May make deliveries to customer home or place of business [DELIVERER,
MERCHANDISE (retail trade) 299.477-010]. May write orders, decorate cakes,

that a hypothetical individual with Plaintiff's vocational profile and a limitation to medium work could perform both jobs comprising his past, relevant work. (R. 67-68).

This issue was previously raised by Plaintiff's counsel in *Holder v. Berryhill*, 2018 WL 1857061 (N.D. Ala. Apr. 18, 2018). United States District Judge Virginia E. Hopkins stated:

> Holder argues that *Nelms v. Bowen* and *Schnorr v. Bowen* control.[5] ... (citing *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986); *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987)). *Nelms* stands for the idea that "[i]n the absence of evidence of the physical requirements and demands of appellant's work the ALJ could not properly determine that she retained the residual functional capacity to perform it." *Nelms*, 803 F.2d at 1165. Similarly, *Schnorr* stands for the idea that "[w]here there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the Secretary cannot properly determine whether the claimant has the residual functional capacity to perform his past relevant work." *Schnorr*, 816 F.2d at 581.
>
> The Commissioner cites to the Eleventh Circuit in *Waldrop*.... (citing *Waldrop v. Comm'r of Soc. Sec.*, 379 Fed. Appx. 948, 953 (11th Cir.

---

or describe available specialty products, such as birthday cakes. May order merchandise from warehouse or supplier. May be designated according to type of food sold as Grocery Clerk (retail trade); Meat Counter Clerk (retail trade); Produce Clerk (retail trade) I; Sales Clerk, Fish (retail trade).

1991 WL 275555

[5]Footnote 2 in Judge Hopkins's opinion provides: "Holder also cites to *Lucas v. Sullivan* for essentially the same idea as *Schnorr* and *Nelms*. ... (citing *Lucas v. Sullivan,* 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990))." *Holder*, 2018 WL 1857061, *3 n.2.

2010) ).  That case states, in relevant part:

> Because the record demonstrates that the ALJ considered
> the DOT and the VE's testimony, Waldrop's claim that
> the ALJ failed to adequately develop the record lacks
> merit.  Moreover, even if the ALJ erred by failing to ask
> additional questions about the physical demands posed
> by Waldrop's past work as a human resources clerk, this
> error did not prejudice Waldrop, as Mancini's expert
> testimony demonstrated that Waldrop could perform this
> job as it is performed in the general economy.

*Waldrop*, 379 Fed. Appx. at 953.[6]  This Court agrees with this logic.
The ALJ properly developed the record surrounding Holder's
employment as she performed it because he had a work history report
..., the benefit of a hearing where Holder was represented by counsel
who could develop this record ..., the help of an impartial vocational
expert...,[7] and he relied on the Dictionary of Occupational Titles ....

---

[6]Footnote 3 in Judge Hopkins's opinion provides: "Holder argues that '*Waldrop* is not
binding authority.' ....  She is correct, but the Court is persuaded by *Waldrop* none the less.
Further, the Court in *Waldrop* cited to the *Schnorr* decision.  *See Waldrop*, 379 Fed. Appx. at
953."  *Holder*, 2018 WL 1857061, *4 n.3.

[7]Footnote 4 in Judge Hopkins's opinion provides:

The Code of Federal Regulations states that:

> A vocational expert or specialist may offer relevant evidence within his or
> her expertise or knowledge concerning the physical and mental demands
> of a claimant's past relevant work, either as the claimant actually
> performed it or as generally performed in the national economy.  Such
> evidence may be helpful in supplementing or evaluating the accuracy of
> the claimant's description of his past work.  In addition, a vocational
> expert or specialist may offer expert opinion testimony in response to a
> hypothetical question about whether a person with the physical and mental
> limitations imposed by the claimant's medical impairment(s) can meet the
> demands of the claimant's previous work, either as the claimant actually
> performed it <u>or as generally performed in the national economy</u>.

Additionally, "[w]hile [claimant] points out that the record contains limited information concerning her duties [in her past relevant work], <u>it is the claimant's burden to demonstrate</u> not only that she can no longer perform her past relevant work as she actually performed it, <u>but also that she can no longer perform this work as it is performed in the general economy</u>." *See Waldrop*, 379 Fed. Appx. at 953 (emphasis added).

*Holder*, 2018 WL 1857061, *3-4 (underlining in original).

The undersigned agrees with the reasoning of Judge Hopkins. Applying that reasoning to this case, the court finds that Plaintiff is not entitled to any relief on this claim for various reasons. First, the VE's testimony, including the references to the DOT, provides substantial evidence that Plaintiff could perform his past relevant work. Second, Plaintiff has not demonstrated that he can no longer preform his past relevant work either as he performed it previously or as the work is generally performed in the national economy. Third, Plaintiff has not shown that any demand associated with either the maintenance mechanic position or the grocery clerk position is inconsistent with his RFC as determined by the ALJ. Thus, the court finds that the determination of the ALJ is supported by substantial evidence and that Plaintiff is not entitled to any relief.

---

20 C.F.R. § 416.960(b)(3) (emphasis added).

*Holder*, 2018 WL 1857061, *4 n.4.

**B.     Treating Physician**

Plaintiff next argues that the ALJ did not afford proper weight to his treating urologist's August 10, 2015 statement and failed to show good cause for failing to do so.  (Doc. 11 at 19).  The Commissioner responds that the ALJ "appropriately assigned 'some, but not great weight' to [the August] statement..." and the ALJ adequately explained his reasoning.  (Doc. 15 at 7-8).

In assessing the weight to be given the evidence provided by Plaintiff's urologist, Dr. Michael B. Kline, 20 C.F.R. § 404.1527(c)(2) provides guidance. The regulation states that the ALJ is to consider the following factors in deciding what weight he or she gives to any medical opinion: the examining relationship, the treatment relationship, the supportability of the medical opinion, the consistency with the record as a whole, the specialization of the medical professional, and other factors, including the medical professional's understanding of the Social Security Administration's disability programs.  *Id*.  A treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). The Eleventh Circuit Court of Appeals has stated that "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In rejecting a medical opinion, the ALJ must clearly articulate his or her reasons for doing so. *Id*.

Dr. Kline is Plaintiff's treating urologist. His August 10, 2015 statement provides:

> The above named patient is under my care due to his present urologic illness. The patient undergoes treatment at our office on a weekly basis due to his bladder cancer. Due to this treatment, the patient has frequency and urgency of urination. The patient has incontinence of urine. The patient is unable to control his urine and is unable to work due to this illness.

(R. 426). In affording "some" weight to his opinion, the ALJ stated:

> Dr. Kline, the claimant's treating urologist, in a letter dated August 10, 2015 (Exhibit 17F), gave a medical source opinion that the claimant was unable to work. The undersigned affords the claimant's treating urologist some, but not great weight. The undersigned notes concerns regarding the alleged reports from this doctor concerning the sudden assessment of bladder cancer, despite almost two years of near perfect health and without any accompanying lab reports or anything else, just the doctor's statement of "disability." Dr. Kline's medical notes suddenly indicate the claimant cannot control his urine, yet as recently as four months earlier there were no problems. The undersigned notes this as being inconsistent and of questionable veracity, especially when noting the evidence itself at Exhibit 17F, pages 3 and 5 and the difference in signatures. It appears the same person did not sign those signatures. Additionally, when noticing the letterhead. On the form with the doctor's office information, Dr. Kline uses his middle initial "B.", in the letterhead, in his signature, and in his signature block. However, the other form has no letterhead and no middle initial "B." A third page, Exhibit [1]7F, page 4, has a stamp and even the stamp has a "B." In addition, once again, is

written on letterhead paper. The undersigned notes the letter indicating that the claimant is "disabled," is dated the same day as Exhibit 7F, page 4, yet the document with the letterhead makes no mention of cancer or bladder problems. The document dated June 22, 2015, "with letterhead," makes no mention of any bladder issues or cancer, making the diagnosis for bladder cancer somewhat suspect. There is a fifth page, Exhibit 16F, page 2, that indicates the claimant underwent chemotherapy treatment, and is on letterhead, but it is not signed. Furthermore, Exhibit 18F, page 3, dated July 24, 2015, regarding the claimant's alleged cancer, oddly enough the pharmacist reports, good luck with your upcoming biopsy and chemotherapy. The undersigned finds it noteworthy that the claimant was talking to the office pharmacist and not Dr. Kline. The surgical notes received in Exhibit 21F, are for the claimant's eyes, not his bladder or prostate. Dr. Kline's office notes dated October 5, 2015, indicated the claimant had recent biopsies and fulguration of the suspected tumor and ***the pathology report came back benign with no evidence of any transitional cell carcinoma***. The claimant was scheduled to return for cystoscopy and follow-up in three months. (Exhibit 24F, page 29).

(R. 25-26 (bold and italics in original)).

As best the court can discern from the record, Dr. Kline began treating Plaintiff in August 2014 for kidney stones and blood in his urine. (R. 362-65). Plaintiff's problems with and treatment for kidney stones continued through June 2015. During a June 1, 2015 visit, Dr. Kline ordered a CT scan. The scan revealed a soft tissue density lesion within the bladder. (R. 493-94). On June 5, 2015, Plaintiff underwent a procedure to remove tumors from his bladder. (R. 55,

448).[8]

On June 22, 2015, Plaintiff saw Dr. Kline for a "post op" visit.  Plaintiff

denied any dysuria[9] or nocturia.[10]  (R. 469-70).  Dr. Kline's physical examination

revealed that Plaintiff appeared "well developed, well-nourished," and in "no

acute distress."  (R. 470).  Dr. Kline noted that Plaintiff would receive BCG[11]

treatments when they became available.  (R. 471).  He did not, however, note

[8]A billing statement from Urologic Health of Eastern AL refers to a June 5, 2015, "TUR BT".  (R. 448).  Dr. Kline also refers to Plaintiff's "recent TUR bladder tumor" in his notes.  (R. 469). It appears that the billing record reference to "TUR BT" is likely a reference to "Transurethral Resection of Bladder Tumor," which is a procedure where bladder tumors can be removed from the bladder wall using a scope that is inserted through the urethra into the bladder, generally performed as an outpatient procedure.  *See* Kansas City Urology Care, http://www. kcurology.com/treatments/transurethral-resection-of-bladder-tumor-turbt.html (last visited May 15, 2018).

[9]"Dysuria" is painful urination.  *See* Mayo Clinic, https://www.mayoclinic.org/symptoms/ painful-urination/basics/definition/sym-20050772 (last visited May 15, 2018).

[10]"Nocturia" is frequent urination during the night.  *See* Mayo Clinic, https://www.mayoclinic.org/symptoms/frequent-urination/basics/definition/ sym-20050712 (last visited May 15, 2018).

[11]"BCG" therapy is defined as follows:

**Bacillus Calmette-Guerin therapy**: Bacillus Calmette-Guerin (BCG) is the main intravesical immunotherapy for treating early-stage bladder cancer. BCG is a germ that is related to the one that causes tuberculosis (TB), but it doesn't usually cause serious disease.  BCG is put directly into the bladder through a catheter. The body's immune system cells are attracted to the bladder and activated by BCG, which in turn affects the bladder cancer cells.  Treatment is usually started a few weeks after a TURBT and is given once a week for 6 weeks.  Sometimes long-term maintenance BCG therapy is given.

*See* American Cancer Society, https://www.cancer.org/cancer/bladder-cancer/treating/ intravesical-therapy.html (last visited May 15, 2018).

any problems Plaintiff was experiencing with frequent or uncontrolled urination.

Plaintiff had six BCG treatments during August and September 2015. Plaintiff again denied any dysuria or nocturia during these visits. Dr. Kline did not identify any problems during Plaintiff's treatment and/or physical examinations. There was no indication of frequent or uncontrolled urination in his notes. (R. 472-89). Dr. Kline performed a "bladder tumor, recheck" procedure on August 3, 2015, that showed no tumors. (R. 474). Plaintiff's October 5, 2015 visit notes show that Plaintiff "had recent biopsies and fulguration of suspected tumor," but "the pathology report came back benign [with n]o evidence of any transitional cell carcinoma." (R. 492, 504-05).

The court finds that the ALJ's opinion on this matter is supported by substantial evidence. It is evident from a review of Dr. Kline's contemporaneous notes that they are inconsistent with his August 2015 statement. They do not support a conclusion that Plaintiff is "unable to control his urine and is unable to work due to his illness." (R. 426). Plaintiff did not report frequent or uncontrolled urination. Additionally, Dr. Kline's notes do not evidence disabling impairments. To the contrary, Plaintiff's visits demonstrate that he improved following the GCB therapy and he received a very favorable report following his

retest.[12]  Additionally, Plaintiff's activities of daily living do not support a claim

that he suffered from disabling impairments.  For instance, he reported being able

to work in his wood shop.[13]  (*See e.g.* R. 405).

To the extent Plaintiff argues that the ALJ should have sought additional

information from Dr. Kline, the court disagrees.  (Doc. 11 at 22).  While the ALJ

has a duty to develop a full and fair record, he is not required to do so when the

record is sufficient to make an informed decision.  *Robinson v. Astrue* 365 F.

---

[12]The court does note that Plaintiff was diagnosed with BPH with urinary frequency.
BPH is defined as follows:

> Benign prostatic hyperplasia (BPH) is also known as benign prostatic
> hypertrophy.  It is a histologic diagnosis which is characterized by proliferation of
> the cellular elements of the prostate.  BPH is the most common cause of lower
> urinary tract symptoms (LUTS), which are divided into storage, voiding, and
> symptoms which occur after urination.

> Usually men develop enlargement of prostate after the age of 50.  When the
> prostate enlarges, it may constrict the flow of urine.  Nerves within the prostate
> and bladder may also play a role in causing the symptoms including urinary
> frequency, urinary urgency, hesitancy that means difficulty initiating the urinary
> stream, interrupted or weak stream.

*See* BPH ICD 9,  http://www.medicalbillingcodings.org/2016/05/bph-icd-9-code-with
-obstruction.html (last visited May 15, 2018).  However, there was no report of incontinence.  To
the contrary, the record notes demonstrate that Plaintiff reported "no incontinence." (*See, e.g.,* R.
382).

[13]The court notes that the ALJ conducted an extensive analysis of Dr. Kline's August 10,
2015 letter, including an evaluation of the letterhead and the signature with other notes and
documents.  (*See* R. 25-26).  The undersigned is not impacted by this analysis in resolving the
issues presented in this matter.  The court finds that evidence does establish Plaintiff's bladder
cancer and BCG therapy.  However, it also clearly establishes that Plaintiff had recovered from
his surgery and there was no evidence of any additional cancer.  Additionally, the record
establishes that he did not suffer from incontinence.

App'x 993, 999 (11th Cir. 2010). In determining whether a remand is appropriate, the dispositive issue is "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice" to Plaintiff. *Id*. The court finds that the record in this case is sufficient for an informed decision. Additionally, Plaintiff has failed to demonstrate the requisite "unfairness or clear prejudice" to justify a remand.

### C.    Plaintiff's Credibility

Plaintiff next argues that the ALJ's reasons for discounting his symptoms and limitations are inadequate. (Doc. 11 at 28-30). The Commissioner responds that this claim is waived due to the perfunctory manner in which it is advanced. (Doc. 15 at 13-14). Additionally, the Commissioner argues that substantial evidence supports the ALJ's determination. (*Id*. at 16-19).

### 1.    Waiver

The Eleventh Circuit has stated that "simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue." *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278-79 (11th Cir. 2009). Here, Plaintiff asserts in his initial brief that the ALJ failed to state adequate reasons for finding him not credible, but he does not challenge any of the ALJ's articulated reasons for discrediting his testimony. He simply declares the ALJ's reasons to be inadequate without providing any analysis or discussion of why that is so.

Moreover, Plaintiff does not address the Commissioner's waiver argument in his reply brief. (*See* Doc. 16 at 9-11). Thus, the court finds he has waived or abandoned this claim. Regardless, as will be demonstrated below, the substantive claim is without merit.

### 2.     The Substantive Claim

Plaintiff contends that the ALJ failed to state adequate reasons for finding his testimony not credible. In addressing Plaintiff's subjective description of pain and symptoms, the law is clear: he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or evidence establishing that his medical condition could reasonably be expected to give rise to his alleged symptoms. *See* 20 C.F.R. § 404.1529(a), (b); Social Security Ruling (SSR) 96-7p, 1996 WL 374186;[14] *Wilson v Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2013).[15] In determining whether

---

[14]SSR 16-3p superseded SSR 96-7p effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1237954, at *1 (amending the effective date of SSR 16-3p to March 28, 2016); 2016 WL 1119029, at *1 (implementing SSR 16-3p). Because the ALJ decided this case before the March 28, 2016, implementation date, SSR 16-3p does not apply to a review of his analysis.

[15]In *Wilson*, the court stated:

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits

substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable . . . [the court] to conclude that the ALJ considered [the] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations and alterations omitted).

In this case, the ALJ assessed Plaintiff's subjective claims. Initially, the ALJ noted he considered "all [Plaintiff's] symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 22). He then noted Plaintiff's claims that were listed in his application documents, including depression, anxiety, arthritis, post-traumatic stress disorder, gastro-esophageal reflux disease, diabetes mellitus,

---

subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

*Id.*, 284 F.3d at 1225.

Type II, mini strokes, and low testosterone and how they limited his ability to work. The ALJ also noted that Plaintiff stated that he had difficulties with lifting, squatting, standing, reaching, kneeling, stair climbing, concentrating, and getting along with others. (R. 23 (citing R. 218)). The ALJ, however, also found that Plaintiff stated that he continued to work with those conditions and they did not cause him to make changes in his work activity. (*Id*.) He further found that Plaintiff's daily activities included preparing simple meals; doing some household chores, such as small household repairs and yard work; walking; driving; riding in a car; shopping in a store or by computer thrice weekly; engaging in hobbies, including television, woodworking, fishing, collecting rocks, old coins, and collectible coins; caring for pets; caring for his two-year old grandson; going to church; going out to dinner with his family; going on vacations; and visiting with relatives. (R. 23 (citing 238-253)). Plaintiff's ability to work, function, and be around others was further corroborated by a third-party function report from his wife. (R. 23, 238-45).

Premised on the foregoing, the ALJ concluded that Plaintiff's daily activities are "not indicative of a finding of 'disabled.'" (R. 23). The court agrees. Additionally, as noted by the ALJ, Plaintiff's statements to medical providers are inconsistent with his allegations of disabling symptoms and limitations. For

instance, his comments during examinations demonstrate that he generally responded well to medication. (*See* R. 102, 343, 349, 350, 352). His medical examinations just before and shortly after his amended onset date (April 2014) do not evidence disabling complaints. To the contrary, they evidence no significant limiting conditions. (*See* R. 366-67). Additionally, as discussed above, Plaintiff recovered quite well from his bladder cancer and treatment related to that illness.

### D.    Side Effects of Plaintiff's Medications

Plaintiff next argues that the ALJ did not properly develop the record concerning the side effects of medications he was taking. In support of this contention, he states that Lyrica made him tired and that Buspirone and Zoloft made him sleepy. (Doc. 11 at 30 (citing R.. 49, 60). The Commissioner argues that while the ALJ did not explicitly discuss the effects of these medications, he implicitly discredited Plaintiff's subjective allegations regarding the side effects of his medications. (Doc. 15 at 20-21). The Commissioner also argues that a remand to the ALJ on this issue would be a waste of judicial and administrative resources. (*Id*. at 21).

The side effects of medication is an element the ALJ should consider when evaluating a claimant's subjective symptoms. *See Walker v. Comm'r of Soc. Sec*., 404 F. App'x 362, 366 (11th Cir. 2010). While the ALJ has the responsibility of

fully developing the record, the claimant is not relieved of his burden of proving he is disabled. *Id.*

Plaintiff's counsel is in part correct; the ALJ did not separately discuss the evidence related to Plaintiff's alleged medication side effects. However, there is no requirement that the ALJ specifically refer to every piece of evidence in the record as long as the court can conclude that he considered Plaintiff's medical condition as a whole. As stated by the Commissioner, the proper standard of review is whether the ALJ's conclusions as a whole are supported by substantial evidence in the record. (Doc. 15 at 19 (citing *Dyer*, 395 F.3d at 1211 (11th Cir. 2005); *Lipscomb v. Comm'r of Soc. Sec.*, 199 F. App'x 903, 906 (11th Cir. 2006) (applying that principle to the issue of side effects of medications); *Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987) (ALJ not required to use particular formulations or phrases as long as it can be determined that the claimant's entire medical condition has been considered pursuant to the proper regulatory and statutory requirements)).

The ALJ stated at least four times in his opinion that he considered all the evidence concerning Plaintiff's impairments and symptoms. (*See* R. 22 ("The undersigned has considered all of the claimant's impairments individually and in combination...." and "the undersigned has considered all symptoms and the extent

to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence...."); R. 27 ("Therefore, after careful consideration of the evidence...."); and R. 28 ("The undersigned carefully reviewed all of the evidence....")).  It is evident that the ALJ fulfilled his responsibility in this instance.  This is especially true as to the present claim because the ALJ specifically stated (1) that Plaintiff's allegations of totally disabling symptoms were not supported by the medical records and (2) that "[w]hile the allegations regarding the nature of the symptoms are found to be supported within the medical evidence in the file, the contentions regarding the severity of, and the related functional restrictions, are not fully supported."  (R. 27).  Thus, the court finds that the ALJ impliedly considered Plaintiff's allegations about his symptoms and limitations cause by the medications and correctly discounted them.

To the extent Plaintiff seeks a remand, the court finds that the circumstances do not justify a remand.  While Plaintiff testified that his medications made him tired and sleepy (R. 49), he never complained during his numerous medical visits about these side effects.  (*See, e.g.,* R. 308, 338, 339, 340, 341, 342, 343, 344, 345, 352, 356, 361, 362, 366, 367, 369, 370, 388).  The court finds that a remand would not change the evidence or the result in this case.  Thus, a remand is not

warranted.  *See NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ error harmless where correcting the error would not change the ALJ's decision).

### E.    Evaluation of Plaintiff's Severe Impairments

Plaintiff lastly argues that his bladder cancer and frequent urination were severe impairments that the ALJ failed to consider.  (Doc. 11 at 32-33).  The Commissioner responds that the ALJ thoroughly discussed Plaintiff's medical issues and any error would be harmless.  (Doc. 15 at 21-23).  Plaintiff does not address the Commissioner's argument that any error was harmless in his reply brief.  (*See* Doc. 16 at 12).

During the second step of the sequential evaluation process, the ALJ did not list bladder cancer and frequent urination.  They were not on the list of thirteen severe impairments or on the list of non-severe impairments found by the ALJ.[16] (*See* R. 19).  However, because the ALJ continued in the evaluation process and, as discussed above, fully evaluated and correctly decided the impact of Plaintiff's

_____

[16]Bladder and prostate cancer were discussed, but the terse references were more fully fleshed out in a later section of the opinion discussing Plaintiff's RFC.  (*Compare* R. 18 & R. 24-26).

bladder cancer and urination issues, there was no error. *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("there is no need for an ALJ to identify every severe impairment at step two"). This claim is without merit.

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 18th day of May, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge